1
2
3
4          UNITED STATES DISTRICT COURT
5        NORTHERN DISTRICT OF CALIFORNIA
6

| | |
|---|---|
| JEFFREY WALKER, | Case No. 24-cv-05756 EJD (PR) |
| Plaintiff, | |
| v. | **ORDER OF SERVICE; DIRECTING DEFENDANTS TO FILE DISPOSITIVE MOTION OR NOTICE REGARDING SUCH MOTION; INSTRUCTIONS TO CLERK** |
| CHIEF ADAMS, et al., | |
| Defendants. | |

United States District Court
Northern District of California

Plaintiff, a civil detainee, filed the instant pro se civil rights action pursuant to 42 U.S.C. § 1983 against staff at two separate jails within San Francisco County, as well as the City and County of San Francisco and Sheriff Miaamoto.  Dkt. No. 1 at 4-7.  Plaintiff's motion for leave to proceed in forma pauperis will be addressed in a separate order.

**DISCUSSION**

A.    **Standard of Review**

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.  See 28 U.S.C. § 1915A(a).  In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief.  See id. § 1915A(b)(1), (2).  Pro se pleadings must, however, be liberally construed.  See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988).

**B.      Plaintiff's Claims**

Plaintiff claims that he is a civil detainee in the custody of San Francisco County. Dkt. No. 1 at 7.  He claims the complaint involves "CJ2 incidents carried over to CJ3 San Bruno."  Dkt. No. 1 at 7.

**1.      Allegations at County Jail #2 (CJ2)**

On or about October 27, 2021, Plaintiff was at the County Jail in San Francisco ("CJ2") for a new probable cause hearing under the SVPA (Sexually Violent Predators Act). Id. at 9.  Plaintiff told the hearing judge of his safety concerns about being returned to a facility where he would have contact with certain deputies against whom he had won a financial settlement for an excessive force claim. Id. at 9-10.  The Sheriff's Department assured his counsel that Plaintiff would not have contact with certain deputies, would be housed separately as a civil detainee, and not be housed at San Bruno. Id. at 10.

Plaintiff claims that on April 14, 2024, Lt. Williams attempted to classify him as an "SNY sensitive needs or identified p.c. protective custody."[1] Dkt. No. 1 at 11.  Plaintiff claims she did so in retaliation for his filing a complaint against another deputy and to place his life in danger. Id.  Plaintiff claims that Lt. Williams also attempted to have him dress in clothing that indicated "criminal" (orange) rather than civil detainee (green) status. Id. at 12-13.  Plaintiff spoke to Lt. Zehner, head of classification, who confirmed Plaintiff's detainee status and had his restrictions removed. Id.

On May 1, 2024, Lt. Williams came to his cell and told him to put on the orange clothing. Id. at 13.  Lt. Williams was told that Plaintiff could keep his green clothes. Id. Then Plaintiff was taken to an optometry appointment. Id. at 14.  Upon his return, he was taken to "F pod G.P. intake housing upper tier restricted housing" which was in violation of the housing policy for civil detainees. Id.  Capt. Collins and Sgt. O'Reilly were present. Id.

---

[1] It is unclear where this incident occurred, which was prior to Plaintiff's transfer to San Bruno Jail.

United States District Court
Northern District of California

United States District Court
Northern District of California

Plaintiff felt threatened because he had enemy concerns in F pod of which Defendant Capt. Collins was aware.  Id. at 15.  He began to feel "nauseated, sick and chest pain came" as he began to have "flash backs" of previous attacks.  Id.  When he asked for mental health, Sgt. O'Reilly refused, stating that if Plaintiff was suicidal, he would be placed in a safety cell.  Id.  When Plaintiff appeared to have trouble breathing, a nurse was called; she took Plaintiff's blood pressure which was "dangerously high."  Id. at 16.  When Capt. Collins and Sgt. O'Reilly asked Plaintiff if he was suicidal, Plaintiff denied it, stating that if he was having suicidal ideations, he should not be punished by placement in holding isolation cell rather than on observation.  Id.  Defendants took Plaintiff to "observation C pod room 4."  Id.  Plaintiff claims that he was told that Chief Adams gave the order to all staff "not to allow Plaintiff anything, no legal documents, no canteen, nothing."  Id. at 17.  Plaintiff claims this was in retaliation for the "Deputy Wang incident, and complaint, the numerous staff complaints."  Id.

Plaintiff also claims that on the following day, May 2, 2024, Chief Adams ordered his transfer to San Bruno Jail to be housed in criminal detainee restrictive housing section "designed for punishment."  Id.  Plaintiff claims that while he was asleep "with cover/blanket over his head," he awoke when Deputies Ly, Yuzon, and Tiu assaulted him. Id.  He states that he "felt pain from being assaulted hits, kicks to body causing excruciating pain."  Id.  Plaintiff claims Lt. Clasal and Sgt. Calloway gave the orders for deputies to open his cell door.  Id. at 18.  Plaintiff also claims that he was being assaulted by "John does 1-6 while approximately 9 were in room committed the assault."  Id.  He was then bound with waist chains on hands and feet, placed in a wheelchair, and transferred to CJ3.  Id.  He claims that when he was taken to the van for transport, he saw his legal documents (approximately 13 boxes worth) in big bags.  Id. at 19.

### 2.   Allegations at County Jail #3 (CJ3)

Upon his arrival at San Bruno, Plaintiff informed Captain Qauntico and Lt. Rolo that he was not supposed to be housed at CJ3 as a criminal detainee according to the assurances that the Sheriff's Department had given him during his last hearing.  Id. at 20.

1  However, Captain Qauntico disregarded Plaintiff's constitutional rights.  Id.  Plaintiff

2  claims that his rights were violated by being placed in restricted housing, which subjects

3  him to the same conditions of confinement as a criminal.  Id. at 21.  He also claims that he

4  was denied medical treatment when he arrived at the Jail on May 2, 2024.  Id.

5       Plaintiff alleges that Defendant Rold came to take a "PREA complaint from

6  allegation days prior at CJ2."  Id.  Plaintiff claims that report was falsified as he did not say

7  any of the things of which he was accused.  Id.  Plaintiff claims his right to due process

8  was violated in the subsequent disciplinary proceedings.  Id. at 22.  He also claims

9  Defendants Rold and Gray violated "PREA confidentiality" and denied the "RTC rape

10  trauma person support rep" to be present during the questioning and instead harassed him.

11  Id.  Plaintiff also alleges that Dr. Praft and Dr. Main did not conduct a PREA forensic

12  exam and collect forensic evidence.  Id. at 23.  He also claims that Dr. Main prohibited all

13  nursing staff from having contact with Plaintiff, which also denied him prescribed medical

14  treatment for his pain.  Id.  Plaintiff claims these actions were in retaliation for his

15  numerous complaints on Dr. Mina and Dr. Praft.  Id. at 24.  Plaintiff claims he has been

16  denied physical therapy, a medical mattress and foam cushion, and a wheelchair by Dr.

17  Main and Dr. Asa in order to punish him.  Id.  Plaintiff also claims that he has been denied

18  mental health treatment for PTSD and trauma recovery.  Id. at 25.  He claims that he has

19  been left without adequate treatment, causing physical injuries and mental, emotional

20  trauma.  Id.

21       Plaintiff claims Sheriff Miaamoto is responsible for overseeing jails and policies.

22  Id. at 25.  He also claims that "civil detainee housing and PREA policies violated civil

23  rights, and needs fixing."  Id.  He also claims that civil detainee have no separate housing

24  unit while SNY and transgender get pod housing and programs.  Id.    Lastly, he claims he

25  was denied mental health treatment for PTSD, and trauma discovery because the psych

26  director, Mary Doe, refused to answer grievances and prohibited other psych clinicians to

27  assist.  Id.

28

Based on these allegations, Plaintiff asserts "cruel and unusual punishment, retaliation, state and constitutional under Federal law civil rights that was violated, First, Fourteenth, Fifth, Eighth, Due Process. Dkt. No. 1 at 11. He asserts the allegations include excessive force, failure to protect, and deliberate indifference to medical needs claims. Id. at 17-19. He also asserts discrimination with respect to his housing. Id. at 20.

The glaring problem with this lengthy complaint is that it clearly violates the rules for joinder under Rules 18 and 20 of the Federal Rules of Civil Procedure.

### 3.    Joinder

"A party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). Accordingly, "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). "Unrelated claims against different defendants belong in different suits," not only to prevent the sort of "morass" that a multi-claim, multi-defendant suit can produce, "but also to ensure that prisoners pay the required filing fees – for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of required fees." Id. (citing 28 U.S.C. § 1915(g)). Furthermore, parties may be joined as defendants in one action only "if any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

Therefore, under Rule 18(a), Plaintiff may join multiple claims, for example, against a single defendant, e.g., deliberate indifference to medical needs and failure to protect claims against Sgt. O'Reilly at CJ2. However, under Rule 20(a), he may only join the other Defendants in the same action if his right to relief is asserted against all of them jointly or severally, or his claims arise out of the same transaction, occurrence, or series of transactions or occurrences. The numerous claims discussed above are clearly not all

United States District Court
Northern District of California

1  related because they occur at two different jails, CJ2 and CJ3, and involve two different

2  sets of Defendants.  Furthermore, there is no right to relief that is common to all the

3  Defendants nor does his claims arise out of the same transaction, occurrent, or series of

4  transactions or occurrences.  For example, it cannot be said that his excessive force claim

5  against CJ2 officers are related to his deliberate indifference to medical needs claim

6  against medical staff at CJ3.  Accordingly, unless Plaintiff files an amended complaint that

7  complies with Rules 18(a) and 20(a), this action must be dismissed as containing mis-

8  joined claims.

9      **4.**    <u>**Amended Complaint**</u>

10      Plaintiff shall be granted one opportunity to correct the deficiencies discussed

11  above.  Plaintiff should keep the following in mind in preparing an amended complaint.

12  First, he must not join in this action any claims that violate Rules 18(a) and 20(a) as

13  discussed above.  Liability may be imposed on an individual defendant under § 1983 only

14  if Plaintiff can show that the defendant proximately caused the deprivation of a federally

15  protected right.  *See Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988).  A person deprives

16  another of a constitutional right within the meaning of section 1983 if he does an

17  affirmative act, participates in another's affirmative act or omits to perform an act which

18  he is legally required to do, that causes the deprivation of which the plaintiff complains.

19  *See Leer*, 844 F.2d at 633.

20               **CONCLUSION**

21      For the reasons stated above, the Court orders as follows:

22      1.    The complaint is **DISMISSED with leave to amend**.  Within **twenty-eight**

23  **(28) days** of the date this order is filed, Plaintiff shall file an amended complaint to correct

24  the deficiencies described above.  The amended complaint must include the caption and

25  civil case number used in this order, Case No. 24-cv-03314 EJD (PR), and the words

26  "AMENDED COMPLAINT" on the first page.  If using the court form complaint, Plaintiff

27  must answer all the questions on the form in order for the action to proceed.  The amended

28  complaint supersedes the original complaint, which will be treated thereafter as non-

existent.  Ramirez v. Cty. Of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015).

Consequently, claims not included in the amended complaint are no longer claims and

defendants not named therein are no longer defendants.  See Ferdik v. Bonzelet, 963 F.2d

1258, 1262 (9th Cir.1992).

    2.    **Failure to respond in accordance with this order in the time provided will result in the dismissal of this action for violating Rules 18(a) and 20(a).**

    3.    The Clerk shall include two copies of the court's complaint and two copies of the court's form petition with a copy of this order to Plaintiff.

    **IT IS SO ORDERED.**

Dated:  October 4, 2024

EDWARD J. DAVILA
United States District Judge

United States District Court
Northern District of California

7